## Ward *versus* Tyler.

1. Meylert & Ward were sued by Tyler on notes drawn by them to another, by whom they were endorsed to Jessup, by him to Tyler, and by him to a bank. The bank recovered part of the note from Tyler, and the remainder from Jessup. *Held*, that Jessup was not a competent witness for Tyler, being interested in the notes to the extent of his payment.

2. The holder of negotiable paper may sue in his own name, though but an agent for others.

3. After recovery by Tyler of the amount of the notes, he would be compelled to pay to Jessup the portion due him, or on payment by Jessup of the portion due Tyler, Jessup would be entitled to subrogation to the judgment.

4. Tyler released Jessup from all obligations to him. *Held*, that this did not discharge the drawers from the part due to Jessup, and therefore Jessup's interest continued.

5. The bank had obtained judgment on the two notes against Meylert & Ward, and Jessup had become bail for stay of execution. The record of this was offered as evidence of Jessup's interest and rejected as irrelevant. *Held*, that this was not error, Jessup being already liable to the bank as endorser on the notes.

6. The recovery by Tyler against Meylert & Ward would not extinguish the judgment of the bank against them, but Tyler might use their judgment by way of subrogation, and therefore Jessup's liability as bail for stay continued.

7. Notwithstanding the dissolution of a partnership, it still exists for the purpose of closing the business, and one partner may bind another by notes given for that purpose.

ERROR to the Court of Common Pleas of *Bradford county.*

This was an action of debt, commenced January 3d 1863, by Wellington H. Tyler against Michael Meylert and Christopher L. Ward. Ward alone was summoned, and Tyler having died, George D. Montayne, his administrator, was substituted. The action was brought by Tyler as endorsee on the two following notes, which were made by Meylert:—

[*Ward v.* Tyler.]

" $1108.80.                                    New York, March 6th 1857.

" Four months after date we promise to pay to order of Lackawanna Railroad Company Eleven Hundred and Eight $\frac{80}{100}$ Dollars, at Messrs. E. W. Clark, Dodge & Co., New York, value received.

(Signed)      " MEYLERT & WARD.

" Endorsed—

" LACKAWANNA RAILROAD COMPANY,
W. H. TYLER, General Agent,
WILLIAM JESSUP,
W. H. TYLER.'

" 1509.95.                                    New York, April 10th 1857.

" Three months after date we promise to pay to order of Lackawanna Railroad Company Fifteen Hundred and Nine $\frac{95}{100}$ Dollars, at Messrs. E. W. Clark, Dodge & Co., New York, value received.

(Signed)      " MEYLERT & WARD.

" Endorsed—

" LACKAWANNA RAILROAD COMPANY,
W. H. TYLER, General Agent,
WILLIAM JESSUP,
W. H. TYLER."

Meylert & Ward were contractors with the Lackawanna Railroad Company for making their railroad, &c.; and having finished one division of it, the company, on the 12th of August 1856, took the contract off their hands, and there was then a final settlement between all the parties to the contract. The points of defence by Ward were that at the date of the notes the partnership did not exist, and that they were not given for partnership purposes. The principal question considered in the Supreme Court was the competency of Judge Jessup as a witness. The Pittsfield Bank, who had been holder of the notes as endorsee of Tyler, recovered judgment for $5587.19 against him in Massachusetts on them and the following draft:—

" Office of the Lackawanna Railroad and Coal Company,
" 2450.                                    New York, May 7th 1857.

" Three months after date please pay to the order of W. H. Tyler, Esq., General Agent, Twenty-four Hundred and Fifty Dollars, or advise this day, and charge to this office.

Your obedient servant,

" WILLIAM JESSUP, President.

" To Michael Meylert, Treasurer Lackawanna Railroad Co.

" Endorsed—

" W. H. TYLER, General Agent,
WILLIAM JESSUP,
MICHAEL MEYLERT,
W. H. TYLER."

[Ward v. Tyler.]

The bank made from the property of Tyler $3018.50, and also recovered judgment against Jessup in Pennsylvania as endorser of the same notes and draft, and realized from Jessup about $2600, the balance due upon them. Tyler before the trial released Jessup " from all obligations as my endorser on the aforesaid notes."

The plaintiff then offered in evidence the deposition of Judge Jessup, which was admitted against the defendant's objection, and an exception taken.

The defendant offered in evidence the suit of the Pittsfield Bank, in Luzerne county, against Meylert & Ward (Meylert alone having been summoned), as drawers of the two notes, in which there was judgment against Meylert for $2732.80, and Judge Jessup became bail for stay of execution. On objection by the plaintiff this offer was rejected and an exception taken.

The defendant asked the court to charge :—

1. If the jury believe that the notes in controversy were made or put in circulation by Meylert, without the consent of Ward, after the partnership work was completed, then the plaintiff is not entitled to recover.

3. Should the jury believe that the consideration of the notes grew out of the partnership matters of Meylert & Ward in the construction of the railroad, and that they were made and put into circulation after the work was fully completed by Meylert without the knowledge of Ward, then he would not be liable on them, unless he has done something since the notes were put in circulation, which would make him liable.

4. Should the jury believe that the defendant is liable in this suit, then that the plaintiff in this case can only recover a proportional amount of what he paid at the suit of the Pittsfield Bank, which the claim in this suit bears to the whole amount of the judgment in that case, and that the defendant is entitled to a set-off against this on the amount paid on these notes as sworn to by William Jessup.

5. The partnership shown here was a special one, legally terminating on the completion of the object or purpose for which it was formed, which in this case was when the railroad was completed, the coal shafts opened and accepted by the Lackawanna Railroad Company. The notes in this case having been made to that company after such termination of the partnership, it was necessarily affected by notice that Meylert had no power to bind his former partner by the notes in question.

The court (H. W. Williams, P. J.) charged, amongst other things :—

" But if the *business* of the partnership was not closed (although the work mentioned in the settlement of 11th August 1856 may

[Ward *v.* Tyler.]

have been finished), and the notes in suit were given for partnership purposes, while the *business* of the firm was in process of settlement, then we instruct you that the notes are binding upon the partnership and on the defendant as a member of it."

And on the points of defendant:—

" 1. We affirm this point, substituting the word ' business' for the word ' work.'

" 3. We affirm this point, with the qualification that we have made to the 1st point.

" 4. We deny the doctrine of this point so far as relates to the appropriation of money raised on the judgment in favour of the Pittsfield Bank, and affirm so much as relates to the application of the payments shown by the testimony of William Jessup.

" 5. We affirm the first part of this point, adding that notwithstanding the dissolution resulting from the completion of work, the partnership still existed for the purpose of settling and closing up its business, including debts due to and from the partnership. As to the last part of this point, we instruct you, that if you find the fact assumed, then Tyler's position, as we have already said, will justify the inference of notice."

There was a verdict for plaintiff for $2990.13.

The rulings on the evidence were the 1st and 2d errors assigned. The above portion of the charge was the 6th error. The answers to the 1st, 3d, 4th and 5th points of the defendant were the 7th, 8th, 9th and 10th errors.

*H. W. Patrick* and *W. A. Peck*, for plaintiff in error, on the 1st error cited 2 Pars. on Cont. 146 ; Bardwell *v.* Lydall, 7 Bing. 489; Blackstone Bank *v.* Hill, 10 Pick. 129, 133 ; 5 Am. Law Reg. N. S., No. 5, pp. 257–8 ; Commercial Bank *v.* Cunningham, 24 Pick. 270, 276 ; Chitty on Bills, M. P. 343, 394 and note ; Mowran *v.* Lamb, 7 Cowen 174 ; Payne *v.* Eden, 3 Caines' Rep. 213 ; Gallagher *v.* Milligan, 3 Penna. R. 177 ; Hatz *v.* Snyder, 2 Casey 511 ; Bailey *v.* Knapp, 7 Harris 192. On the 6th, 7th, 8th and 10th errors they cited Story on Part., §§ 280, 321, 322, 323 & 334; Gow on Part., 3d ed., pp. 6 & 218; 3 Kent Com., 4th ed., p. 53 ; Mumford *v.* McKay, 8 Wend. 442 ; Fellows *v.* Wyman, 33 N. H. 356 ; Griswold *v.* Waddington, 16 Johns. R. 491 ; Collyer on Part., 5th Am. Ed., § 115 ; Story, § 322–3 ; Bisset on Part. 60 ; Gow. 231 ; Collyer, § 121, 546 and notes ; Lansing *v.* Gaine & Ten Eyck, 2 Johns. 300 ; Bank of South Carolina *v.* Humphreys, 1 McCord 388 ; Martin *v.* Walton, Id. 16 ; Kilgour *v.* Finleyson, 1 H. Black. 155 ; Woodworth *v.* Downer, 13 Verm. 532 ; National Bank *v.* Morton, 1 Hill 572 ; Wood *v.* Braddick, 1 Taunt. 104 ; Anthon 119 ; Long *v.* Story, 10 Mass. 636 ; 5 Mason 56 ; 1 Starkie 375 ; 3 Kent Com. 67 ; Sandford *v.* Mickles, 4 Johns. 224 ; 3 Esp. 110 ; 19 Maine 355 ;

[Ward v. Tyler.]

·Levy v. Cadet, 17 S. & R. 128; Gow on Part. 212, 310; 4
Johns. 227; 3 Id. 538; Searight v. Craighead, 1 Penna. R. 138;
Bell v. Morrison, 1 Peters 351, 373; Whitehead v. Bank of
Pittsburgh, 2 W. & S. 176–79; Estate of Davis & Desauque, 5
Whart. 530; Schoneman v. Fegley, 7 Barr 438; Reppert v.
Colvin, 12 Wright 252; Houser v. Irvine, 3 W. & S. 345;
Petrikin v. Collier, 1 Barr 247; Robinson et al. v. Taylor
& Co., 4 Barr 242; Ensign v. Ward, 1 Johns. Cas. 171; Story
on Part., § 334; Gow 249, 273–4 and notes; Patterson v.
Zachariah, 1 Stark. 58; Whitman v. Leonard, 3 Pick. 177; 11
Ves. 5; 15 Id. 27; 16 Id. 57.

*Bentley, Fitch & Bentley,* for defendant in error, cited Wollen-
weber v. Ketterlinus, 5 Harris 389; Epler v. Funk, 8 Barr 468;
Plank Road Co. v. Ramage, 8 Harris 95; Bisbing v. Graham, 2
Harris 14; Bailey v. Knapp, *supra;* Hawkins v. Cree, 1 Wright
494; Estate of Davis & Desauque, 5 Whart. 530; Houser v.
Irvine, 3 W. & S. 345; Robinson v. Taylor, 4 Barr 242.

The opinion of the court was delivered, October 17th 1866, by
AGNEW, J.—Was William Jessup a competent witness? This
is the question raised by the 1st and 2d assignments of error.
To understand it we must state the facts.    Meylert & Ward
were sued as drawers of two notes, $1108.80 and $1509.95, to
the Lackawanna Railroad Co., endorsed by Jessup to Tyler, and
by Tyler to the Pittsfield Bank.    Jessup was the endorser also
of a draft of the Lackawanna Railroad Co. on Meylert, their
treasurer, payable to Tyler, their general agent, subsequently
endorsed by Meylert individually to Tyler individually, and by
him to the Pittsfield Bank.
The bank brought suit against Tyler in Massachusetts, and
recovered a single judgment for the sum of these three instru-
ments, and collected by execution out of Tyler's property $3018.50,
applied to the debt.    The bank also brought suit in Pennsylvania
against Jessup, and recovered a single judgment against him for
the total sum of these three instruments.    On this judgment the
bank collected, by sale on execution, the balance of the judg-
ment, after crediting the sum paid by Tyler's property in Massa-
chusetts.    Thus when the bank was paid off, Tyler's interest in the
notes and draft was to the extent of his payment on their account,
viz., $3018.50, and on the surrender of the paper to him by the
bank, he was the trustee for Jessup to the extent of the balance
which Jessup had paid to the bank.    Therefore, when Tyler
brought this suit against Meylert & Ward, the drawers of the
two notes, he was a trustee of Jessup to the amount of Jessup's
interest in the notes.    It is well-settled law that the holder of
negotiable paper may sue on it in his own name, although but an

[*Ward v.* Tyler.]

agent or trustee for others: Brown *v.* Clark, 2 Harris 479; 2 Pars. on Notes and Bills 436. But Jessup's interest in the two notes was only a proportional amount of his payment. That payment being made by operation of law, viz., a sale under execution, upon a judgment comprising a draft, for which Ward, and Meylert & Ward as a firm, were not liable, Jessup's interest in the notes bore the same proportion to them as his payment bore to the whole judgment. Tyler gave no credit to Meylert & Ward for this proportional part coming to Jessup, while the charge of the court and the amount of the verdict show that none was given *on* the trial. It is clear, therefore, that this suit of Tyler against Meylert & Ward was brought and enforced by Tyler for the whole amount of the notes, and consequently, as the trustee of Jessup, to the extent of his proportional interest in the notes. After recovery and collection, Tyler would be compelled to pay over to Jessup the proportion belonging to him, or on payment by Jessup of the proportion coming to Tyler, Jessup would be entitled to subrogation to the judgment of Tyler against Meylert & Ward: Robinson *et al. v.* Huntingdon Bank, 1 Penna. R. 395; Lloyd *v.* Barr, 1 Jones 41; Lenox *v.* Prout, 3 Wheat. 520.

Thus it will be seen that Jessup was the beneficial owner of a part of the notes, and on this part Tyler's release did not operate. His release to Jessup discharged him from liability to the extent of the proportion of the notes coming to himself, but did not discharge Meylert & Ward, the drawers, from that part which belonged to Jessup. The suit still proceeded against them for the whole amount of the notes, and Jessup was still directly interested in Tyler's recovery. The court below, therefore, erred in admitting Jessup's depositions. No point was made in the court below as to the incompetency of Jessup as an endorser and assignee on the ground of policy, according to the doctrine of Post and Avery.

The 2d assignment of error is to the rejection of the record of the judgment of the Pittsfield Bank *v.* Meylert, who was impleaded with Ward, upon which Jessup became bail for Meylert for a stay of execution. This is rendered immaterial by what has been said already, Jessup being otherwise interested in the suit when his deposition was taken. We may say, however, it is difficult to see what difference the admission of the record would have made. Jessup was liable already to the bank as endorser of the notes, so that whether he paid the bank as endorser or as bail for a stay of execution, he would be entitled to the use of the notes and of the judgment against Meylert & Ward. It is argued, however, that the recovery of Tyler in this suit against Meylert & Ward would extinguish the judgment of the Pittsfield Bank against them on which Jessup is bail for the stay of execution, and, therefore, Jessup was interested in this recovery in order to

extinguish his liability as bail. But according to the authorities already quoted, Tyler is entitled to use the judgment of the Bank of Pittsfield by way of subrogation. The security of the judgment in this case would be only cumulative, and it might be still important for Tyler to resort to the judgment of the bank on account of its earlier lien. It is satisfaction only by Meylert & Ward which can operate to extinguish. Until satisfaction by them Jessup is liable to Tyler to the extent of his interest in the note in either way, and it would seem to be immaterial, therefore, to him whether he has to pay as endorser or as bail.

There is nothing in the 3d, 4th and 5th assignments of error which needs notice. They are not sustained.

The 6th, 7th, 8th and 10th assignments all involve the same question as to the dissolution of the partnership and the authority of Meylert to sign the partnership name while the business of the firm remained unsettled. As a statement of the general principle, the charge of the court and the answers to the 1st, 3d and 5th points are sustained by the cases of Estate of Davis & Desauque, 5 Wh. 530; Houser v. Irvine, 3 W. & S. 346; Petrikin v. Collier, 1 Barr 247; Robinson v. Taylor, 4 Id. 242; and Brown v. Clark, 2 Harris 474–5. Substituting the word " business" for the word " work," the defendants had the benefit of the answers of the court to their 1st, 3d and 5th points, that the notes created no liability if given after the business of the partnership was fully completed. If the intention of the defendants was to have the opinion of the court upon the sufficiency of the evidence to show the dissolution in fact previous to the making of the notes, and the insufficiency of the evidence to show that the notes were given in a partnership transaction, it was their duty so to have framed their point, and then to have furnished us with the whole evidence to enable us to review the instructions given. But none of the documents relating to the question of dissolution are printed. Even the extract from the minute-book, containing the alleged final settlement, is not before us. Under these circumstances, the court having stated the general principles of law correctly, we are unable to say that they were inaptly applied to the special facts in the case.

Nor can we say there was error in the answer to the defendants' 4th point, which asked the court to confine the recovery of Tyler to the proportion he had paid on the notes of Meylert & Ward. We have already shown that a legal holder of negotiable paper may sue thereupon though but a trustee for others. In this case Tyler had a beneficial interest of his own to recover as well as for the interest of Jessup, and was not bound to split up the action. Had Jessup's portion been credited and had he been suing only for his own proportionate interest, then that interest would have been measured by his payment; his interest in the

[Ward *v.* Tyler.]

note bearing the same proportion to the payment which the notes bore to the whole judgment. This is manifest; Jessup having paid the whole balance of the judgment, this was necessarily a payment of the balance of the notes, beyond the payment of Tyler.

Upon the whole case we discover no substantial error except the admission of Jessup's deposition, and for this the judgment is reversed, and a *venire facias de novo* awarded.